UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANTIAGO NEGRIN BARREDA,

                Petitioner,

    v.

TODD BLANCHE, et al.,

                Respondents.

Case No. C26-1592-SKV

ORDER GRANTING WRIT OF
HABEAS CORPUS

Petitioner Santiago Negrin Barreda is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 6. Petitioner asserts, amongst other grounds, that he is entitled to release from custody because his removal is not reasonably foreseeable and his continued detention is therefore in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See id*. at 26. He seeks immediate release and injunctive relief related to third country removal and future re-detention. *See id.* at 32–33. Respondents filed a return to the petition, Dkt. 9, together with a supporting declaration and excerpts from Petitioner's immigration file. *See* Dkts. 10–11. Petitioner filed a reply. *See* Dkt. 12.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 1

The Court, having considered the parties' submissions and the governing law, GRANTS in part the petition for writ of habeas corpus and ORDERS that Petitioner be released within twenty-four (24) hours of this Order on the same conditions of supervision previously authorized. Petitioner's requests for injunctive relief are GRANTED in part and DENIED in part.

## I.   BACKGROUND

Petitioner is a native and citizen of Cuba. *See* Dkt. 6 at 6. He first entered the United States on or about December 17, 2017. *See id.* On December 10, 2018, ICE encountered Petitioner at a Florida jail. *See* Dkt. 10 at 1. On February 1, 2019, Petitioner was issued a Notice to Appear charging him as removable from the United States and scheduling him for removal proceedings. *See id.* at 2. He was taken into immigration custody the following day. *See id.* On April 16, 2019, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba, and Petitioner was deported shortly thereafter. *See* Dkt. 11-1 at 2; Dkt. 10 at 2.

On August 21, 2020, United States Border Patrol arrested Petitioner near the southern border in Texas for unlawful presence in the United States, and his prior order of removal was reinstated. *See* Dkt. 10 at 2. Petitioner claimed fear of returning to Cuba. *See id.* United States Citizenship and Immigration Services ("USCIS") conducted a reasonable fear interview and, on September 17, 2020, made a positive fear finding. *See id.* Still detained, Petitioner applied for asylum and was placed in withholding only proceedings. *See id.*; Dkt. 6 at 6.

On January 7, 2021, an IJ denied Petitioner's asylum application and withholding of removal. *See* Dkt. 6 at 6; Dkt. 11-2 at 2. Petitioner appealed that order to the Board of Immigration Appeals ("BIA"). *See* Dkt. 6 at 6; Dkt. 10 at 2. On April 14, 2021, pending resolution of his BIA appeal, Petitioner was released on an Order of Supervision ("OSUP"). *See*

ORDER GRANTING WRIT OF HABEAS CORPUS
- 2

Dkt. 10 at 3; Dkt. 11-3 at 4–5 (OSUP and Addendum).  On July 22, 2021, the BIA dismissed Petitioner's appeal, but Petitioner was not removed from the United States.  *See* Dkt. 10 at 3.

On May 27, 2025, Petitioner was taken into immigration custody during a check-in.  *See id.*  Respondents were unable to locate evidence indicating that Petitioner was then given written notice of his OSUP's revocation or an informal interview.  *See* Dkt. 9 at 3 n.1.  That same day, ICE sent "the requisite Cuban removal nomination information to ERO HQ for referral to Cuban officials."  Dkt. 10 at 3.

Following unsuccessful efforts to obtain a seat for Petitioner on a charter flight for Cubans in October 2025, ICE served Petitioner with a notice of third country removal to Mexico.[1]  *See id.*  On November 19, 2025, Petitioner refused to board a bus to Mexico.  *See id.*  On March 4, 2026, Petitioner was served with a Warning for Failure to Depart form and again refused to accept Mexico as a third country for removal.  *See id.* at 3.  He did indicate willingness to be removed to Canada.  *See id.* at 3–4.  On March 10, 2026, Cuban officials denied Petitioner's repatriation.  *See id.* at 4.

## II.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

[1] The record does not indicate whether the October 2025 charter flight was destined for Cuba or another country.  As ICE initiated the process for obtaining Cuban officials' consent to accept Petitioner in May 2025 and received a declination almost a year later in March 2026, Petitioner ostensibly did not have authorization from Cuban officials to return to Cuba in October 2025.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 3

III.     DISCUSSION

The Immigration and Nationality Act expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings.  *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. § 1231(a)(2).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision.  *See* 8 U.S.C. § 1231(a)(6).  Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely.  *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States.  *See id.* at 701.  The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States.  *Id.*  "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing."  *Id.*  If the government is unable to meet its burden, then the noncitizen must be released from detention.  *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Petitioner has remained continuously detained for the past twelve months.  He was also detained for almost eight months between 2020 and 2021 following reinstatement of his removal

ORDER GRANTING WRIT OF HABEAS CORPUS
- 4

order.  His country of origin has denied his repatriation, and Petitioner asserts that he refused removal to Mexico due to fear and lack of ties to that country.  *See* Dkt. 6 at 7.  He further claims that Mexico will not accept him if he is unwilling.  *See id.* at 7, 38 (citing a sworn declaration of an ICE Deportation Officer dated November 5, 2025, filed in Southern District of California Case No. 25-2866-JES-VET, stating that the Mexican government agreed to accept an individual "only if he would willingly go to Mexico.").  Petitioner has therefore demonstrated that he has been detained beyond the presumptively reasonable period recognized in *Zadvydas*, and he has shown good reason to believe there is no significant likelihood of removal to Cuba, Mexico, or any other country in the reasonably foreseeable future.

Respondents have not responded with any evidence rebutting that showing.  They assert that "they have actively and continuously pursued third-country removal to Mexico including formal notices, preparation for travel, and ongoing diplomatic engagement[]" and that "removal is foreseeable as soon as Petitioner cooperates or a third country accepts."  Dkt. 9 at 7.  However, Respondents provide no evidence that Mexico has ever agreed to accept Petitioner—an omission underscored by Respondents' assessment that removal will happen when *either* Petitioner cooperates with removal attempts *or* "a third country accepts."[2]  Nor do they respond to Petitioner's allegation that Mexico will not accept individuals who refuse Mexico as a third country for removal.  They do not claim to have identified any alternative third countries for removal, and they provide no estimate for how long it would take to do so and then arrange

---

[2] Respondents highlight "Petitioner's repeated refusals to make a fear claim[]" as an indicator he is frustrating removal efforts that could end his detention.  Dkt. 9 at 8.  That assertion is odd.  Petitioner may, but is not obligated to, assert fear of removal to any particular country.  Respondents claim Petitioner did not express fear of removal to Mexico when served with a notice of third country removal on November 5, 2025.  *See* Dkt. 10 at 3.  They do not reveal whether Petitioner was afforded meaningful opportunity to make a fear claim then or any time thereafter.  If Petitioner had an opportunity and refused to claim fear, it is not apparent how that refusal obstructed Respondents' efforts to remove him to Mexico by rendering unnecessary further USCIS fear screening procedures.  Regardless, Petitioner does allege fear of removal to Mexico in his petition.  *See* Dkt. 6 at 7.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 5

Petitioner's removal.  They also do not assert that Petitioner has refused to provide necessary information or impeded efforts to procure travel documents, though it is unclear from Respondents' return memorandum whether any such efforts were made.  *Cf. Pelich v. I.N.S.*, 329 F.3d 1057, 1059, 1061 (9th Cir. 2003) (holding a petitioner's refusal to complete a Polish passport application and provision of conflicting biographical information prolonged his detention and thwarted his *Zadvydas* claim).  "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur."  *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (citations omitted).  Here, Respondents offer nothing more than stated intent to remove Petitioner and assertions that they will eventually succeed.  The Court therefore finds Petitioner is entitled to release.[3]

B.      Requests for Injunctive Relief

Petitioner also seeks various forms of injunctive relief barring his re-detention and removal absent certain conditions.  First, Petitioner asks the Court to bar Respondents from re-detaining him without a prior hearing "at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released" or otherwise re-detaining him without first obtaining a valid travel document to Cuba, providing the document to Petitioner and his counsel, affording him two months to leave of his own accord, and, if he does not leave, arranging concrete plans to put him on a flight to Cuba.  Dkt. 6 at 32–33.  In support of his requests, he broadly asserts that "there is a significant likelihood that Respondents would seek again to re-detain Petitioner unlawfully[ because] Respondents have a policy to round up as

---

[3] In view of this finding, the Court declines to address Petitioner's arguments regarding the lawfulness of his re-detention.

ORDER GRANTING WRIT OF HABEAS CORPUS
- 6

many noncitizens as possible." *Id.* at 27.  However, Petitioner does not elaborate on why he believes Respondents are likely to re-detain *him* unlawfully after his release pursuant to this Order.  Nor does he provide any authority supporting his requests to bar his re-detention absent advance provision of a travel document to Cuba, which he recognizes will not accept him, and opportunity to leave of his own accord.  *See* Dkt. 12 at 2.  If Petitioner is indeed positioned to arrange his own departure, he might do so once released pursuant to this Order without need for injunctive relief.  Further, his discussion of pre-detention process due is a generalized discussion of the *Mathews* factors without meaningful application to his own factual circumstances.  *See* Dkt. 6 at 11–13; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The Court accordingly finds these requests for injunctive relief speculative and inadequately briefed and DENIES them without prejudice.

Second, Petitioner asks the Court to bar Respondents from removing him to a third country without due process or any country where he may be imprisoned or tortured.  Because Cuba has declined to accept Petitioner and Petitioner is subject to a final order of removal, removal will necessarily be to a third country.  A number of courts in this district have recently addressed challenges to ICE's third-country removal policy, *see* Dkt. 6 at 40, and have concluded that the policy violates due process, *see Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see also Nguyen*, 796 F. Supp. 3d at 716, 727–29.  In reaching these conclusions, the courts have relied on an earlier decision from this district, *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019).

In *Aden*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity

ORDER GRANTING WRIT OF HABEAS CORPUS
- 7

to raise and pursue his claim for withholding of deportation." *Id.* at 1009. Citing to both the due process requirement that a petitioner be afforded "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim," and to the statutory requirements of 8 U.S.C. § 1231, the *Aden* court held that in the context of a third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due in these circumstances." *Id.* at 1010 (citations omitted). Rather, the court concluded, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court noted that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and held that ICE's current policy governing third-country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727–28.

The Court finds no basis to deviate from the reasoning in *Baltodano*, *Abukaka*, and *Nguyen*, and applies the same reasoning here. The Court therefore concludes that Petitioner is entitled to the requested order that Respondents not remove him to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings. That process will allow Petitioner to challenge any particular proposed third-country removal where he can show a risk of imprisonment or other serious harm, and nothing in this Order prevents him from pursuing additional relief if warranted by future events.

IV.    CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus, Dkt. 6, is GRANTED in part;

(2)    Respondents shall RELEASE Petitioner within **twenty-four (24) hours** of this Order on the previously operative conditions of supervision and shall file a notice

ORDER GRANTING WRIT OF HABEAS CORPUS
- 8

with the Court within **forty-eight (48) hours** confirming Petitioner has been released from immigration detention;

(3)     Respondents shall not remove Petitioner to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings; and,

(4)     Petitioner's remaining requests for injunctive relief are DENIED without prejudice.

Dated this 5th day of June, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING WRIT OF HABEAS CORPUS
- 9